DR. LUIS E. GONZÁLEZ SALDAÑA, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, MANUEL A. MOREDA, JUDGE, Respondent.

No. C-66-80.      Decided May 28, 1968.

*Ángel Viera Martínez* for petitioner. *Francisco Ponsa Feliú, Wilson F. Colberg,* and *Miguel A. Valdejully* for intervener, the University of Puerto Rico.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Torres Rigual.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

This appeal is based on our decision and Order in *González Saldaña* v. *Superior Court,* 92 P.R.R. 462 (1965).

The Order having been received in the trial court on June 16, 1965, the following August 4 it accordingly ordered the Chancellor of the University of Puerto Rico to reinstate the petitioner Dr. Luis E. González Saldaña in his position as assistant professor attached to the Institute of Forensic Medicine, or in default thereof to appear on August 17, 1965 to show cause why he should not be bound to do so.

The Chancellor answered and on October 6, 1965 the trial court rendered judgment in which it concluded, as a matter of fact, that Dr. Luis E. González Saldaña is assistant professor with a permanent position since July 1, 1960. That at the time that he acquired his permanency, he was rendering services in the Institute of Forensic Medicine, *his duties consisting in the supervision of the forensic medicine work and forensic pathology,* for which he specialized at Harvard University for one year, and at the University of Maryland for another year and holding also a certificate of the American Board of Pathology in anatomic and forensic pathology. The court also concluded that Dr. González was transferred by Dr. Marcial Rojas, Director of the Medico-Legal Institute, to the Division of Neuropathology, and to

the service of Pathology of the Hospital de Siquiatría, under the supervision of Dr. Rosa E. Fiol.

After stating certain legal considerations on the manner of interpreting the right of permanency, so that the proper elasticity be maintained in the administrative field, and after setting forth its theory that the right of permanency is not so ample as to make immovable the teaching personnel of the institution, and that it may be transferred from one professorship to another, the court concluded as to this particular case as follows:

"The situation as to the Institute of Forensic Medicine in Puerto Rico presents special characteristics. The Institute was created by law to perform certain special duties, and although it is attached to the Department of Pathology of the School of Medicine, it has a life of its own and an independent personality. Its principal duty is not teaching. It was created for the principal purpose of providing the investigation agencies of the state with the services of a forensic doctor so that the latter would help them investigate scientifically the cases in which the death of a person is involved.

"Economically it is autonomous. The funds to cover the expenses of its operation are appropriated in the General Budget of Expenses of the Commonwealth. The necessary technical and administrative personnel to perform the duties which were prescribed by law, is appointed by the Chancellor directly for the Institute, and these appointments are made under the rules and procedures in force at the University. So that one is not dealing with personnel appointed by the School of Medicine, paid with University funds, to which duties in the Institute are assigned.

"Plaintiff was appointed for a position in the Institute of Forensic Medicine, and he acquired permanency therein and not in the School of General Medicine. The Director of the Institute may assign to him, within the Institute, the functions and duties which he deems pertinent, as long as they correspond to the *rank and position* for which petitioner has acquired permanency.

"In view of the foregoing reasons, the Chancellor of the University of Puerto Rico is required to reinstate plaintiff

Dr. Luis E. González Saldaña in his position in the Institute of Forensic Medicine and therein he must be assigned duties *consistent with the rank* in which he acquired permanency."

The preceding judgment was notified to the parties on October 8, 1965. Review thereof was not requested, for which reason it became final and unappealable.

Five and a half months later, on March 23, 1966, the petitioner filed a motion to show cause before the trial court, in fact, a motion for execution of the judgment rendered.

He alleged that on December 7, 1965, Dr. Raúl Marcial, Head of the Department of Pathology of the School of Medicine told him to assume his duties in the Institute of Forensic Medicine as *Assistant Forensic Pathologist* (emphasis by Dr. Marcial) being responsible for his work to the Head of the Division of Forensic Pathology, Dr. Juan Velázquez Vera. The aforementioned communication, which reads as previously said, was admitted in evidence.

According to other documentary evidence in the record, on January 17, 1966, petitioner reassumed his duties in the Institute of Forensic Medicine under written protest that he had not been reinstated in the position corresponding to him. He stated that although he would perform with discipline the duties assigned to him, he was not waiving his right to the litigated position of Assistant Professor attached to the Institute of Forensic Medicine as Supervisor. This letter was answered by the Dean of the School of Medicine, Dr. Adán Nigaglioni, on February 2, 1966, stating that there existed certain differences of opinions between them as to the scope of the judgment rendered by the Superior Court of San Juan, and at the same time praising the disciplinary attitude assumed by the petitioner. The Dean did not touch the question raised by petitioner. The petitioner also alleged in his motion to show cause that during the time in which he had been unlawfully deprived of his position other professors had been promoted to his rank and to superior ranks with a

raise in salary and other privileges. He requested the trial court to order his reinstatement in the position corresponding him with the corresponding salary, or else that the court issue an order to show causes why its judgment was not executed.

A hearing was held on the previous motion, and on June 15, 1966 the trial court denied it. To review that judgment we issue a writ of certiorari.

In deciding the incident the trial court stated that plaintiff's motion brought before the consideration of the court the judgment rendered on October 6, 1965 *"and he requests that said judgment be interpreted by the court in its true scope and effect."* (Italics ours.)

■ As a matter of fact, what the trial court did by way of "interpretation" of its judgment was to render pronouncements which involved the merits of the controversy already adjudicated by final and unappealable judgment. The record reveals that in this incident the trial court seemed to hold views which to a certain point altered the judgment rendered.

■■ In this petition the final and unappealable judgment, which decided the suit and which constitutes res judicata and the applicable law for the parties, is not subject to review. It may be said, incidentally, that said judgment is not intrinsically erroneous in the light of the applicable law and of the Order of this Court in the first stage of this litigation. It is correct, according to the conclusion of the court, that the petitioner's case presents special characteristics with respect to other rules of general application to the professors, since it concerns the Institute of Forensic Medicine and the special act under which this Institute operates and was created. The judgment of October 6, 1965 ordered the Chancellor to reinstate petitioner Dr. Luis E. González Saldaña in his position in the Institute of Forensic Medicine "and to assign to him such duties as are consistent with

*the rank in which he acquired permanency.*" That pronouncement is binding on the parties and constitutes, we repeat, the law of the case. Obviously the evidence reveals that the Chancellor of the University and the Dean of the School of Medicine did not comply with the judgment. The Dean himself admits that he assumed the position of *interpreting it.* In the answer to the complaint, the alleged fact, that the petitioner was Assistant Professor exercising the duties of supervision in the Institute of Forensic Medicine when he was removed, was accepted. The trial court found it as a proven fact. The record shows that the order of the court of June 15, 1966, which denied the motion to enforce the judgment, and denied the petitioner every remedy, must be set aside.

This controversy is in dispute since 1963, first in the administrative sphere, later in the judicial, and again in the administrative. During this time petitioner has been kept away from his duties, without any charges to remove him having been preferred against him as the applicable law of the University requires. See *González Saldaña* v. *Superior Court, supra.*

In furtherance of justice and in the public interest, it is proper for the debate to come to an end at once. We hope that the authorities of the University and of the School of Medicine shall so understand it when they receive the pertinent order from the trial court, issued in accordance with its own judgment and with the Order which is issued herein.

For the reasons stated, the order of the trial court of June 15, 1966, which denied petitioner every remedy, will be set aside and the record will be remanded to enter another enforcing its own judgment in the terms contained therein, with such other provisions as it may deem proper not inconsistent with the pronouncements made herein.